# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DARRELL SPARKS, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00280 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.   Introduction**

Plaintiff Darrell Sparks brings this case challenging the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB).  He asserts here, as he did before the administration, that he has been under a benefits-qualifying disability – starting on August 28, 2010 – due to coronary artery disease, hypertensive cardiovascular disease, depression, lower back problems, high blood pressure, hernias, anxiety, and severe arthritis in his left knee.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

#11), the administrative record (Doc. #6), and the record as a whole.

## II.     Background

### A.     Plaintiff's Testimony

Plaintiff was 45 years old on his alleged disability onset date, placing him in the category of a "younger person" for purposes of resolving his claim for DIB.  *See* 20 C.F.R. § 404.1563(c).  He has a limited, 11th grade, education.  His past relevant employment includes work as a heavy equipment operator.

At his administrative hearing in January 2013, Plaintiff testified he is 5' 11" tall and weighs approximately 313 pounds.[2]  (*PageID#* 94).  He lives with his wife and two adult sons.  He has a driver's license but only drives a couple days a week.  Plaintiff dropped out of high school in 12th grade.  He was a heavy equipment operator for 22 years and a supervisor for the last 11 years.

Plaintiff explained that he had his left knee replaced in January 2012 and then started having complications from the surgery.  (*PageID#* 97).  The knee had bothered him since 2010 and injections did not help the pain.  Plaintiff testified that presently when he walks or stands for a long period of time, his knee buckles and "the whole left side of my leg is numb." (*Id.*).  Plaintiff has informed his doctor about this and was apparently told that sometimes all the feeling does not come back after surgery.  (*PageID#* 98).  No additional treatment was recommended.

---

[2] Plaintiff indicated this represents a gain of about 30 pounds since his alleged onset date of disability. (*PageID#* 109).

Plaintiff also experiences back pain.  At the time of the hearing, he was scheduled to see the back surgeon in a few weeks.  Plaintiff takes Vicodin for the pain, as well as an anti-inflammatory drug that he could not recall the name of.  He has been taking these medications for approximately 6 months.  He also had injections and underwent physical therapy, apparently resulting in little, if any, improvement.

In addition to his physical impairments, Plaintiff testified he is "in a depression real bad." (*PageID#* 99).  He explained, "I mean, it seems like I can't deal with other people – being around other people." (*Id.*).  Plaintiff indicated he has been depressed for a couple of years and has been seeing a therapist since 2011.  He is prescribed Wellbutrin for his symptoms.

At the hearing, Plaintiff also discussed his daily activities.  (*PageID#* 102).  He testified he can only stand for 20 to 30 minutes at a time before his legs go numb and can only sit for approximately 30 minutes before his back starts hurting and he needs to stand up.  He watches television for 30 minutes but then needs to stand up.  He estimates he can only wash a few dishes at a time.  Plaintiff believes he can only lift approximately 10 pounds due to his back pain.  He does not vacuum.  He does not mow the grass or do any yard work.  He can drive a couple of times a week to visit his mother but does not visit with other friends or family members.  He does not go to church or do anything else on a regular basis.  Plaintiff has not gone on any vacations since August 2010.  He is able to bathe and dress himself.  He has a computer at home and is able to use it, but he stated, "I'm not a computer person.  I don't get on much at all." (*PageID#* 104).  Plaintiff

watches television throughout the day. He testified, "I leave it on, you know, and I watch it off and on between getting up and moving around a little bit . . . ." (*Id.*). He does not read newspapers, books or magazines.

When cross examined by his counsel, Plaintiff indicated that before the knee replacement in December 2011 he underwent a meniscectomy for a torn meniscus. (*PageID#* 106). By January 2011 he developed an effusion in the left knee and ultimately needed his left knee replaced in December 2011. (*PageID#* 107). After the knee replacement, he used a walker, crutches, and then a cane. He also underwent physical therapy. He estimated he was finally able to walk without assistance about 3 months after surgery.

Plaintiff also discussed his depression. He indicated he does not want to deal with people and has crying spells multiple times throughout the week. He easily gets upset and irritated. (*PageID#* 109). He indicated it is his goal to eventually feel well enough to go back to work because he made "good money." (*PageID#* 110).

    **B.**    **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual

recitation.

### III. "Disability" Defined and the ALJ's Decision

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[3] 42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Elizabeth A. Motta applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "left knee internal derangement with residuals of total knee replacement, lumbar degenerative disc disease, obesity, and depressive disorder." (*PageID# 72*).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of

---

[3] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Impairments, including Listing sections 1.02, 1.03, 1.04 and 12.04.  (*PageID#* 73-75).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity[4]:

> to perform a reduced range [of] light work as defined in 20 CFR 404.1567(b) with lifting up to 20 pounds occasionally and 10 pounds frequently; standing and walking limited to a combined total of four hours in an eight-hour workday; no pushing/pulling or use of foot controls with the left leg; no climbing ropes, ladders or scaffolds; no exposure to hazards, such as moving or dangerous machinery or working at unprotected heights; only occasional postural activities; simple, repetitive tasks, low stress work with no strict production quotas or fast-paced work and few changes in the work setting.

(*PageID#* 75).  The ALJ also concluded at Step 4 that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credibly for the reasons explained in this decision." (*PageID#* 76).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.  Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.

---

[4] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.    Discussion**

7

**A.     Listings 1.02 and 1.03**

Plaintiff first argues the ALJ erred by failing to adequately explain why his impairments do not meet or equal Social Security Listings 1.02 and 1.03,[5] which provide in pertinent part:

> 1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints(s).
>
> With:
>
> > A.     Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
> >
> > or
> >
> > B.     Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.
>
> 1.03 *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 CFR Pt. 404, Subpt. P, App. 1.

An inability to ambulate effectively means an "extreme limitation of the ability to

---

[5] The Listing of Impairments is found in 20 C.F.R. Pt. 404, Subpt. P, App. 1 and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

walk." *Id.*, § 1.00(B)(2)(B)(1). Ineffective ambulation is generally defined "as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the function of both upper extremities." (*Id.*). A person ambulates effectively if they are "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living . . . [and can] travel without companion assistance to and from a place of employment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2).

> In this case, the ALJ stated the following regarding Listings 1.02 and 1.03:
>
> The undersigned carefully considered the claimant's internal derangement of the left knee with residuals of total knee replacement under Listing section 1.02 (major dysfunction of a joint) and 1.03 (reconstructive surgery of a major weight-bearing joint). However, the medical evidence of record does not show an inability to ambulate effectively for 12 months or more, as required by these sections (Exhibits 22F, 24F, and testimony).

(*PageID#* 73). Plaintiff argues the "Commissioner is required to provide more than a bare conclusion when making findings of fact and decisions as to the rights of individuals applying for disability." (Doc. #7, *PageID#* 624). Indeed, Plaintiff is correct. The Social Security Act requires the following:

> The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for payment under this title [42 USCS §§ 401 et seq.]. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based . . .

42 U.S.C. § 405(b)(1). Without an appropriate analysis, the Court cannot effectively

evaluate whether the ALJ's decision is supported by substantial evidence. *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011) ("In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.") (other citations omitted).

The ALJ's single, conclusory sentence falls far short of the level of analysis required by the Social Security Act and discussed by the Sixth Circuit in *Reynolds*. The ALJ simply stated, "the medical evidence of record does not show an inability to ambulate effectively for 12 months or more, as required by [Listings 1.02 and 1.03]." She did not evaluate the evidence, compare it to the listing, and give an explained conclusion. Moreover, even if the ALJ's conclusory analysis was somehow sufficient to establish Plaintiff did not *meet* Listings 1.02 and 1.03 based on her conclusion that the record does not show an inability to ambulate effective for 12 months or more, the ALJ provided no analysis as to whether Plaintiff nevertheless may still have *equaled* Listings 1.02 or 1.03. *See* 20 C.F.R. § 404.1526(a)("Your impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment).

While the Commissioner argues Plaintiff does not "offer . . . a single piece of evidence that any of his impairments met or equaled that of an impairment in [the Listings]," (Doc. #10, *PageID#* 645), the record indicates otherwise. For example,

Plaintiff began having knee trouble in 2010, had his total knee replaced in January 2012, and required use of a walker and cane thereafter.  He still continues to have trouble with his knee when walking or standing, and experiences numbness in his legs.  (*PageID##* 96-109, 371-76, 428, 458-59, 482-490, 528, 537, 547, 562).  While the Commissioner is correct in noting that Plaintiff has the burden of establishing that his impairments met or equaled a listed impairment, (Doc. #10, *PageID#* 645), the ALJ is tasked with evaluating such evidence and properly explaining whether it establishes Plaintiff met or equaled a Listing.  *Reynolds*, 424 Fed. Appx. at 416.  In light of the ALJ's failure to provide the appropriate analysis in this case, meaningful judicial review cannot be undertaken at this point to evaluate whether the ALJ's decision is supported by substantial evidence, and thus, resolve the Commissioner's contention that Plaintiff failed to prove he met or equaled Listings 1.02 or 1.03

For these reasons, Plaintiff's Statement of Errors is well taken.

**2.    Obesity**

Plaintiff, who testified he is 5' 11" and weighs approximately 313 pounds, argues the ALJ erred by failing to properly consider his obesity and the impact it has on his other impairments, as required by SSR 02-01p.  (*PageID##* 93-94; Doc. #7, *PageID#* 625).  The Commissioner contends the ALJ did not err, as she "was not explicitly required to cite each of Plaintiff's impairment[s] during her analysis."  (Doc. #10, *PageID#* 646).  Moreover, the Commissioner argues, "the ALJ's decision shows that she did, in fact, consider all Plaintiff's impairments throughout the disability process, including at step

11

three of the sequential evaluation." (*Id.*).

Obesity, as defined in SSR 02-01p, "is a complex, chronic disease characterized by excessive accumulation of body fat." 2002 SSR LEXIS 1, *3. SSR 02-01p notes that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems," and "commonly leads to, and often complicates, chronic disease of the cardiovascular, respiratory, and musculoskeletal body systems." (*Id.* at *6). Not surprisingly, therefore, the Social Security Administration provides that it "will consider obesity in determining whether: [1] The individual has a medically determinable impairment . . . . ; [2] The individual's impairment(s) is severe . . . . ; [3] The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings . . . .; and [4] The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy . . . ." (*Id.* at *7) (bracketed numbering added).

Although the ALJ determined Plaintiff's obesity to be a severe impairment, she did not properly consider it at Step 3, or in her assessment of Plaintiff's residual functional capacity, as required by SSR 02-01p. While an ALJ is not required to use any "particular mode of analysis" in assessing the effect of obesity, *Bledsoe v. Barnhart*, 165 F.App'x 408, 411-12 (6th Cir. 2006), the ALJ must nevertheless "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F.App'x 574, 577 (6th Cir. 2009) (citing *Bledsoe*, 165 Fed. App'x. at 411-12). More than a passing reference is required. *Stone v. Comm'r of Soc.*

12

*Sec.*, 2013 U.S. Dist. LEXIS 138841 (S.D. Ohio September 26, 2013) (Rice, D.J.)("While the Court agrees with the Magistrate Judge's conclusion that '[i]t is a mischaracterization to suggest that SSR 02-1p, 2002 SSR LEXIS 1 offers any particular procedural mode of analysis for obesity claimants,' some analysis of the aggravating tendencies of function caused by obesity, in conjunction with and upon all other severe impairments found by the Hearing Officer, must be performed."); *see also Norman v. Astrue*, 694 F.Supp.2d 738, 741-42 (N.D. Ohio 2010) ("this is more than a requirement that the ALJ mention the fact of obesity in passing . . ."). As the ALJ failed to properly consider Plaintiff's obesity pursuant to SSR 02-01p, this portion of Plaintiff's Statement of Errors is also well taken.[6]

## VI.   Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's

---

[6] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions regarding the ALJ's weighing of medical source opinions and consideration of credibility, pain, and other symptoms is presently unwarranted.

impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence 4 of §405(g) due to problems set forth above. On remand, the ALJ should be directed to: (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Darrell Sparks was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


May 15, 2015

                                                  s/Sharon L. Ovington
                                                    Sharon L. Ovington
                                       Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).